## PROPRIETORS OF CLAREMONT BRIDGE v. CARLOS ROYCE.

*Deed.   Foreign Corporation.   Toll Bridge.   Action on the Case.*

The plaintiffs are a corporation under a charter granted by the legislature of New Hampshire, giving them the right to construct and maintain a toll-bridge across the Connecticut River, and to demand and receive the prescribed tolls from all persons passing over said bridge. In 1862 one Jarvis, owning a piece of land on the Vermont side extending along the river from the bridge which the plaintiffs had built and were operating under their said charter, conveyed to the plaintiffs "the right to control all passage over the land," (described,) "for the purpose of avoiding paying toll to said bridge proprietors, and the right to obstruct any travel over said land for said purpose, with full power in the proprietors to decide in the premises," etc. *Held*, that said described right and interest are the subject of grant and conveyance by deed as an interest in land; and that such right might be so acquired by the plaintiffs though a foreign corporation.

*Held*, that the effect of said deed was to confer upon the plaintiffs the right to obstruct travel across said land by fences, etc., for the purpose named in the deed, and that any one crossing the same to enable him to cross the river on the ice to avoid paying toll, after being forbidden, was liable to the plaintiffs in an action on the case.

CASE for passing over land of the plaintiff to avoid paying toll, etc. Plea, the general issue. Trial by jury, December term, 1869, BARRETT, J., presiding.

The existence and organization of the plaintiffs as a corporation was conceded. Their charter and by-laws and book of

records were produced and given in evidence. It appeared that the bridge of the plaintiffs was built by them in 1837 or 1838, and has ever since been maintained and used as a toll-bridge, except temporary suspensions for the purpose of necessary repairs The plaintiffs gave in evidence a warranty deed of the premises in question, from Hiram H. Graves and wife to Charles Jarvis, dated May 9, 1862. Also offered a deed from said Jarvis to the plaintiffs, dated June 3, 1862, which was objected to as being to a foreign corporation. Objection overruled, and deed admitted. The defendant excepted.

The evidence showed that prior to the building of the bridge by the plaintiffs, an old road called a turnpike (but whether ever chartered or not did not appear) had passed towards the river from what is now the village of Ascutneyville, in Weathersfield, one and one-fourth miles from said river, coming near to the river below, where the west end of said bridge now is, and turning on a curve, passed up the river to a point a little above the present bridge, and ended at the water's edge, where there was an old ferry for public use. In making the bridge, the filling at the back of the west abutment covered and obstructed said road. In order to reach the bridge, the selectmen of Weathersfield laid a straight road for some distance back from it, to its westerly end, leaving said old road to the south of it, until at the bridge the line of the new road crossed the old one. While the bridge was in the process of building, in order to accommodate public travel, the plaintiffs built the new road laid by the selectmen, down to near this bridge, and then the travel, by a way prepared by the plaintiffs, turned to the north, and went down to the old ferry, and so went, till the bridge was completed, when the plaintiffs completed the road direct to the bridge, and that has been used for public travel as a highway ever since. The old turnpike ceased to be used upon being obstructed, and has not been used since. There has been no ferry kept up for public travel since the bridge was built. The land covered by the deed of Jarvis to the plaintiffs is about four acres, extending from the road on the north side of it, to a point on the river bank above the old ferry way, and extending westerly, so as to include the ground over which

the travel went while the bridge was building. Said piece of land was enclosed upon the road-side by a fence in which was a bar-way at the place where the travel had, while the bridge was building, passed from the road over said land to the old ferry. December 22, 1866, J. Weatherbee, Jr., who had title to the land by deed from a former owner, conveyed it by deed to Cone, subject to said deed of Jarvis to the plaintiffs. During the season of cultivation it had been carried on for farming purposes, and the travel way to the old ferry used and mowed like the rest of the land. In most of the winters for fifteen years past, but not all, some persons living in Ascutneyville had gone down from the road leading to the bridge, over that four acre piece, on the course of the travel while the bridge was building, to the place of the old ferry, and on to the river and got ice for filling ice houses, and, in some instances, persons owning land on the river above the bridge, had drawn wood cut on said land, down on the ice to this place, and then up into the said highway leading to the end of the bridge, and in one or more instances, persons wishing to draw out ice, laid down brush at the edge of the bank and threw on snow, to enable teams to pass back and forth. The formation of the land makes it easy passing from said bar-way down to the river at the old ferry place.

In the month of January, and up to the 8th day of February, 1868, the defendant was drawing wood from Weathersfield to Claremont, for sale, and drew it across the plaintiffs' bridge, with a span of horses and a sled, and on his return in many instances, instead of crossing the bridge, he went from the New Hampshire side across on the ice, passing off from it at the old ferry place, and up into the said highway, across said four acre piece, and through said bar-way. To prevent his doing so, and in assertion of their rights, as claimed under said deed from Jarvis, the plaintiffs furnished bars to said bar way, and *caused them to be put in.* They were several times taken down and carried away by persons unknown to the plaintiffs. On the 31st of said January, the defendant took down the bars and cut down the bar posts. The bars were replaced by the plaintiffs on the 8th day of February, 1868. As the defendant was crossing the ice just above the bridge, on

his return from Claremont, where he had been with a load of wood which he had drawn across the bridge, the plaintiffs caused the said bars to be put up, and they forbade the defendant to pass over said piece of land, and out through said bar-way, but he paid no heed thereto, and passed on and tore down the bars, and went through into the highway, and on home. It is for this act that this suit was brought. This act of the defendant was for the purpose and with the intent of avoiding the payment of toll for passing over the bridge, (which at the lawful rate was nine cents,) and he would have been required to to pay it for crossing the bridge with such a team. The bridge was in good condition for travel, and the track well covered with snow.

When the evidence was all in the counsel agreed that there was no occasion for going to the jury, and that the court might *pro forma* direct a verdict for the plaintiffs for nine cents damages, and draw up the case, with leave for the defendant to except, which was so done, and the defendant excepted.

The deed of Charles Jarvis to the plaintiffs, conveyed to the plaintiffs

" The right to control all passage over the land deeded to me May 9, 1862, by Hiram H. Graves, for the purpose of avoiding paying toll to said bridge proprietors, and the right to obstruct any travel over said land for said purpose, with full power to said proprietors to decide in the premises; and also convey to said proprietors the right to occupy said land for a road to the ferry in case of need, or to make repairs upon in case any are needed for said bridge, without cost or damage to said proprietors."

This deed contained the usual covenants of warranty, etc.

Other facts in respect to the declaration, and the provisions of the plaintiffs' charter, are sufficiently stated in the opinion of the court.

*John F. Deane* and *Sewall Fullam*, for the defendant, maintained that the plaintiffs, being a foreign corporation, could not hold real estate in Vermont, and acquired nothing by said deed of Jarvis ; that this case is distinguishable from that of *State* v. *B. C. & M. R. R.*, 25 Vt., 433.

Every citizen of this state has a right to cross the Connecticut, or any other navigable waters, when, where and how he pleases, if the owners of the land over which he passes do not object; he has the right to cross on the ice, by boat, to wade, swim or jump it, without a license from anybody, and hence a grant like this would be in violation of natural law and utterly opposed to sound policy. It is requiring our own citizens to exercise their own natural rights, if at all, by the permission of a soulless foreign corporation.

This is not trespass for crossing the plaintiff's land in this state, but case for crossing the land of others to the injury of a foreign prerogative franchise; in other words for refusing to cross their bridge and pay toll; and the judgment in this case is for *nine cents* for that toll, which, by the laws of New Hampshire they could not collect. Neither their charter nor the laws of that state prohibit the crossing on the ice, and if they did the penalty could not be collected in this state. Disguise this as you will, it is an attempt to collect a penalty not given by law, by purchasing a right not composed of soil or substance, but a mere ideal vapory right, by which to compel people to pay tribute. But what right did the deed convey? A right to do what they did not or could not do, " A right to control or obstruct all passing over for the purpose of avoiding toll to said proprietors of Claremont bridge, and the right to obstruct any travel over the said land and premises." It seems they did not stop it, and did not effectually obstruct it; so their grant was of no value. The deed was improperly given in evidence; it does not convey land or an interest in land; it does not give a right to stop people generally from crossing, but only those who would cross to avoid toll; then it gives no right to make obstructions, unless they were so made as to stop one class and not another. The right is not of either real or personal property, and is not evidence except *inter partes.*

As a question of law, the plaintiff cannot claim that said old road to the ferry was abandoned. This is a question of fact to be decided by the jury upon the evidence, and there was evidence that it had not been abandoned, but had been put in the rate-bill, and used to some extent.

*J. N. Edminster*, for the plaintiff.

The defendant is liable to the plaintiffs for avoiding their bridge in the manner found by the exceptions, even though the plaintiffs held no such right as claimed under the deed of June 3, 1862. Angell & Ames on Corp., 372, ch. 13 ; *Conn. & Pass. R. R. R. Co.* v. *Holton*, 32 Vt., 43 ; Redfield on Railways, 127, § 11 ; *Hurd* v. *R. & B. R. R. Co.*, 25 Vt., 116–125 ; *Perkins* v. *Eastern & B. & M. R. R. Co.*, 29 Maine, 307 ; *Third Turnpike Co.* v. *Champney*, 2 N. H., 199 ; *Cheshire Turnpike* v. *Stevens*, 10 N. H., 133 ; *Ogden* v. *Gibbons*, 4 John. Ch., 148–161 and 162.

The grant in the deed is good. If the plaintiffs owned the land in fee-simple they could obstruct and prevent travel over the same. When they do not own the land or any interest in it, if they obstruct or prevent travel over it, they are doing an injury to the owner of the land. Hence they buy from him the right to make such use of the land as they would if they owned it. It is a right which the owner of the land had, valuable to him, and which he could use. The deed gave the plaintiffs a right to the full possession of the land, together with the use of it, for the purpose specified.

A foreign corporation can take and hold any interest in land in this state that our own corporations can. *State* v. *B. C. & M. R. R. Co.*, 25 Vt., 433. No right can be claimed by the defendant growing out of the " road called a turnpike."

The opinion of the court was delivered by

BARRETT, J. The declaration sets forth such a right in the plaintiffs, as the deed of Jarvis to them of June 3, 1862, purports to grant and convey ; and it alleges acts on the part of the defendant in direct and intended violation of that right. The evidence maintains those allegations. The plaintiffs are a corporation under a charter granted by the legislature of New Hampshire, giving them the right to construct and maintain the toll-bridge in question, and to demand and receive the prescribed tolls from all persons passing over said bridge. But the charter does not in terms confer any further right in this respect. It contains no provision looking to the compelling of persons, by legal requirement, who

may have occasion to cross the river at or near that place, to pass over on said bridge, or to the restraining or in any way hindering them from crossing by any other means than said bridge.

So far then as the law existing by the terms and force of the charter is concerned, nobody is under any legal obligation to use the bridge in crossing the river, or to refrain from passing over by any other means; and clearly the plaintiffs have no claim for toll upon anybody, except such as in fact cross over on their bridge. By the mere fact of crossing the river on the ice to avoid paying toll, no right of the plaintiffs conferred by the charter was violated by the defendant. Whether then the plaintiffs can maintain this action depends on the operation and effect to be given to said deed of Jarvis to them. In the first place, it is claimed that the plaintiffs, by reason of being a foreign corporation, cannot acquire by deed rights in, or in respect to, land in this state. We regard that matter, as involved in cases of this kind, to have been settled, and upon solid ground in the law, in the case of the *State* v. *B. C. & M. R. R. Co.*, 25 Vt., 433. Every reason for holding, as was held in that case, seems to us to have increased force for holding the same doctrine in behalf of a foreign corporation like the plaintiffs, the purpose of which is to make and maintain a bridge for common travel between neighborhoods, towns and states separated by such a stream as the Connecticut river; such bridge being quite as serviceable to the convenience and interests of the inhabitants of Vermont as of New Hampshire.

In the next place, it is claimed that the deed of Jarvis is ineffectual to convey to the plaintiffs any such right as they assert and seek to stand upon in this case. It clearly would have been the right of Jarvis, if he had not given that deed, by virtue of his being the owner of said four acres, to have obstructed by fences and bars, or to have prohibited without fences or bars, such persons as he might choose from passing over that land between the highway and the edge of the river. In the exercise of that right he might have prohibited some and permitted others; and he might have made the distinction for the same purpose and reason, and have made his prohibition upon the same persons, as were contemplated by his deed to the plaintiffs. The interest and right granted were to

be held by the plaintiffs with all the privileges and appurtenances thereof to their own use and behoof forever, with the usual covenants of warranty. This, as between the parties to the deed, would give the plaintiffs just as ample a right, for the purpose named, as Jarvis himself had; and in the exercise of that right it would have been competent, for the accomplishment of that purpose, to have made and maintained any kind of fence, or wall, or other structure, or any embankment or ditch around or upon the land described in said deed. We think such a right and interest is the subject of grant and conveyance by deed as an interest in land.

If the plaintiffs had owned the entire property and estate in said four acres, as Jarvis did before his deed to them, it cannot be doubted that they would have as much right and more reason than he had to control and obstruct travel over it for the purpose of avoiding the payment of toll.

There seems to us to be no ground, on the score of public or state policy, for denying to the plaintiffs the exercise and enjoyment of that right to the fullest extent for realizing the purpose for which it was purchased and granted. The construction and maintenance of such a bridge is a public work, and in the service of the public necessity and convenience to such an extent and in such a sense as to justify and even to require the exercise by the sovereign power of the state of its right of eminent domain, and to call upon the legislature to invest the corporation with special rights and privileges, with a view and for the purpose of encouraging individuals to undertake such enterprises, by making provision for their getting a reasonable reimbursement for their outlay, and a reasonable compensation for their labor, hazards and losses. It is morally right in the eye of the law, therefore, for the plaintiffs, by the exercise of any right they may have in respect to the contiguous land, to secure, as against evasions by whatever motive prompted, a fair use of their bridge for the purposes designed by it, and as the result of which use alone they can realize a just return for their efforts and outlay. It is shown by the case that the defendant was using the bridge to draw over from Vermont to a market in New Hampshire his loads of wood, and then with his

88

empty sled was making his return crossing on the ice to avoid paying toll.   After having done this in many instances, and once certainly having taken down the bars and cut down the bar-posts, the plaintiffs, on replacing said posts and bars, forbade the defendant to pass over said piece of land and out through said bar-way. The defendant did not heed this, but he passed on and tore down the bars and went through into the highway and on home.   For this last act this suit is brought.

The declaration does not count on the right of the plaintiffs to have toll of the defendant, nor on a duty of the defendant to pay toll, nor on the loss of toll by this act of the defendant to which the plaintiffs were entitled; but it counts on the right of the plaintiffs, by erecting and maintaining a bar-way and bars, to obstruct travel over that piece of land for the purpose of avoiding the payment of toll.   It is the violation of that right that constitutes the cause of action declared upon, and for which the recovery of damages is claimed; and it is for such damages—as agreed by the parties—that the judgment was rendered.   We think that such a right existed in the plaintiffs, and that a violation of it, as set forth in the declaration, is shown by the facts proved, and that therefore the present action is a proper one for the recovery of the damages ensuing therefrom.

The case does not involve any question as to highway, and the right to use the same, for there is nothing in it tending to show that from the old ferry up to the bar-way, through which the defendant passed, there ever was any public highway, or any thing more than a temporary way made by the plaintiffs to accommodate public travel to the ferry while the bridge was in the process of construction, or of repair, and then ceasing to be used for such purpose.

The judgment of the county court is affirmed.